**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

AMY JETER GONZALES, ET AL          DOCKET NO. 6:24-cv-01685

VERSUS                             JUDGE DAVID C. JOSEPH

DAVID BLANCHET, ET AL              MAGISTRATE JUDGE WHITEHURST

**REPORT AND RECOMMENDATION**

Before the court are the original and amended civil rights complaints [docs. 1,7] filed by plaintiffs Amy Jeter Gonzales and Michael Craig Duncan, who are proceeding pro se and *in forma pauperis* in this matter.

### I.    BACKGROUND

The suit presently before this Court was originally filed on December 9, 2024, pursuant to 42 U.S.C. § § 1983 and 1985(2) to "redress the deprivation" of plaintiffs' constitutional rights. Doc. 1, p. 3.

Included in that original complaint was a Request for Emergency Injunctive Relief, construed by this Court as a Motion for Preliminary Injunction. *Id*. at p. 33.  Specifically, plaintiffs sought immediate relief to "halt the malicious prosecution of Amy Jeter Gonzales for Felony Obstruction of Justice (Docket No. CR 192967) scheduled for December 5, 2024, in Judge Royal Colbert's court." *Id*. at pp. 33-34.

As the complaint was not on proper forms, the plaintiffs were ordered to amend and file on Court approved forms (doc. 6), which they did on January 28, 2025 (doc. 7).

Plaintiffs brings the instant suit against the following defendants:  David Blanchet, Jean Hill, Andre Douget, Jessica Sonnier Mouton, Chris Rudd, Bryan Fontenot, Jared Palmature,

Hunter Pellerin, Lane Prudhomme, Mark Garber, Shawn Lastrapes, Todd Credeur, Don Landry, and Louis Peret.

The suit stems from a child support dispute which began when plaintiff Michael Craig Duncan divorced Jessica Sonnier Mouton (who is named as a defendant in the instant suit) in November 2017. Doc. 7, p 7. Over the next several years, Duncan and Mouton were in and out of defendant Judge David Blanchet's courtroom in the 15th Judicial District Court. At some point in time, Duncan began dating, and later became engaged to be married to, plaintiff Amy Jeter Gonzales. Plaintiffs make numerous allegations of wrongdoing related to motion hearings before that court, orders signed by Judge Blanchet, and erroneous judgments containing mathematical errors. Duncan filed numerous judicial complaints against Judge Blanchet and his staff attorney, Jean Hill.

On November 16, 2023, while offshore, Duncan was informed by his daughter that Mouton "said you were not at court today and they are issuing a warrant." *Id*. at p. 10. He went to the courthouse on November 18, 2023, upon returning from offshore, and Clerk of Court Louis Perret allegedly informed him that "there was a hearing but it showed Mr. Duncan was not served and there was no warrant." *Id*. Duncun also inquired with District Attorney Don Landry and was told there was no warrant and no criminal contempt had been filed. *Id*.

On December 1, 2023, Gonzales saw Mouton and several Broussard police officers parked across the street from the home in which she lived with Duncan. She attempted to get their German Shepherd dog inside when Officers Chris Rudd, Bryan Fontenot, Jared Palmature and Hunter Pellerin "aggressively entered the gate" of the home "working up the dog." *Id*. When asked if they had a warrant, Officer Rudd said he did not but that he could go get one. Gonzales stepped inside and closed the door, at which point Rudd "kicked in the door and punched Ms. Gonzales."

*Id.*  Several officers then entered the home, more arrived, including Prudhomme and Lastrapes, with guns drawn, surrounding the home.  *Id.*  In addition to Gonzales being injured, the family dog was tased, the bedroom door ripped off the hinges, and a hole was put in the wall.  *Id.*  Duncan and Gonzales were arrested, placed in separated police units and ultimately booked into the Lafayette Parish Jail.  *Id.*

Gonzales was released on bail on December 2, 2023.  *Id.* at p. 11.  She alleges that upon release she contacted the Lafayette Sheriff's Office Internal Affairs and spoke to Captain Todd Credeur who stated, "I know who you are and I have already looked into this, it was Broussard."  *Id.*  Duncan was released on December 15, 2023.  *Id.*

## II.    LAW & ANALYSIS

### A.  Frivolity Review

Plaintiffs are not prisoners; however, they are proceeding in forma pauperis. Docs. 8, 9. District courts have authority under Section 1915 to dismiss a complaint sua sponte where the complaint " (1) is frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief." *Malone v. La. Dep't of Safety & Corr.*, 2017 U.S. Dist. LEXIS 151143 (W.D. La. Aug. 25, 2017) (citations omitted); *see Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997).  A court may dismiss a complaint under this standard "if it lacks an arguable basis in law or fact." *Id.*; *see Moore v. Mabus*, 976 F.2d 268, 269-70 (5th Cir. 1992) (explaining the distinction between factual and legal frivolousness in in forma pauperis complaints). Although courts construe pro se filings liberally in this context, dismissal is appropriate where the claims have no chance of success, *Id.; cf. Booker v. Koonce*, 2 F.3d 114, 115-16 (5th Cir. 1993) (noting dismissal of claims with "some chance" of success is inappropriate at screening stage but affirming dismissal where pro se plaintiff's claim

"[was] based upon an indisputably meritless legal theory"). Moreover, "[t]he statute applies equally to prisoner and non-prisoner cases." *Id.; see, e.g., Booker*, 2 F.3d at 115 (applying Section 1915 to non-prisoner, former arrestee who claimed wrongful arrest and affirming dismissal under Section 1915); *Patel v. United Airlines*, 620 F. App'x 352 (5th Cir. 2015) (per curiam) (applying Section 1915 to non-prisoner pro se litigant); *James v. Richardson*, 344 F. App'x 982, 983 (5th Cir. 2009) (per curiam) ("Section 1915(e)(2)(B) requires dismissal of frivolous IFP actions even if those actions are brought by non-prisoner plaintiffs."). The Court finds in accord with these authorities that Section 1915(e)(2)(B) applies to non-prisoners and prisoners alike and, accordingly, has performed an initial review of the allegations.

### B. *Motion for Preliminary Injunction*

Contained in the original (deficient for form) complaint, filed on December 9, 2024, was a Request for an Emergency Injunction, construed by this Court as a Motion for Preliminary Injunction, wherein the plaintiffs sought "immediate emergency injunctive relief to halt the malicious prosecution of Amy Jeter Gonzales for Felony Obstruction of Justice (Docket No. CR 192967), scheduled for December 5, 2024, in Judge Royal Colbert's court." Doc. 1, pp. 33-34. Without addressing the merits of plaintiff's request, it is clear that by the time the complaint was filed into Court on December 9, 2024, the December 5, 2024 hearing had taken place and, therefore, any request related to that hearing is MOOT.

### C. *Section 1983/Bivens*

Federal law provides a cause of action against any person who, under the color of state law, acts to deprive another of any right, privilege, or immunity secured by the Constitution and laws of the United States. 42 U.S.C. § 1983. In order to hold the defendant liable, a plaintiff must allege facts to show (1) that a constitutional right has been violated and (2) that the conduct complained

of was committed by a person acting under color of federal law; that is, that the defendant was a government actor. *See West v. Atkins*, 108 S. Ct. 2250, 2254–55 (1988).

### D. Illegal Search & Arrest & Excessive Force

The Court finds that the allegations with respect to the legality of the December 1, 2023 search and arrest, as well as the extent of force used when executing the plaintiffs' arrests, have satisfied this Court's standard for initial review.  These claims brought against defendants Bryan Fontenot, Jared Palmature, Hunter Pellerin, Chris Rudd, Lane Prudhomme and Shawn Lastrapes will be addressed in a separate Order.

### E. Child Support/Domestic Dispute

At the outset, it should be noted that federal courts are courts of limited subject matter jurisdiction. This Court is not a super state supreme court and does not have general power to overturn decisions made at the state court level. Under the *Rooker-Feldman* doctrine, "federal district courts lack jurisdiction to entertain collateral attacks on state court judgments.  *Liedtke v. State Bar of Texas,* 18 F.3d 315, 317 (5th Cir. 1994) (citations omitted) ("Absent specific law otherwise providing, that [*Rooker-Feldman*] doctrine directs that federal district courts lack jurisdiction to entertain collateral attacks on state court judgments. Constitutional questions arising in state proceedings are to be resolved by the state courts. If a state trial court errs the judgment is not void, it is to be reviewed and corrected by the appropriate state appellate court. Thereafter, recourse at the federal level is limited solely to an application for a writ of certiorari to the United States Supreme Court. The casting of a complaint in the form of a civil rights action cannot circumvent this rule, as absent a specific delegation 'federal district court[s], as court[s] of original jurisdiction, lack[ ] appellate jurisdiction to review, modify, or nullify final order[s] of state court[s].")

Additionally, this Court lacks subject matter jurisdiction to decide domestic relations disputes. *See, Ex parte Burrus*, 136 U.S. 586, 593-94 (1890) ("The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states, and not to the laws of the United States."); *Franks v. Smith*, 717 F.2d 183, 185 (5th Cir. 1983) ("issues of domestic relations are the province of state courts, going back to *Ex parte Burrus*.") The Fifth Circuit has held that the domestic relations exception applies to prevent federal courts from issuing or modifying "a divorce, alimony, or child custody decree." *Saloom v. Texas Dept. of Family and Child Protective Services,* 578 Fed.Appx. 426, 429-30 (5th Cir. 2014) (quoting *Ankenbrandt v. Richards,* 504 U.S. 689, 701-02, 706-07, (1992) "Thus, federal courts generally abstain from resolving cases involving intrafamily relations," such as child custody actions. Although couched as a civil rights action, the instant suit arises out of a domestic relations situation, going back several years, involving child support determinations and subsequent contempt proceedings in state court. As such, this Court should abstain from involving itself in this case insofar as it relates to the state court proceedings.

### F. Defendants

Moreover, plaintiffs' claims against certain defendants are barred.

#### 1) David Blanchet, Andre Douget, Jean Hill, Don Landry, Louis Peret

It is well settled that "[j]udicial officers are entitled to absolute immunity from claims for damages arising out of acts performed in the exercise of their judicial discretion." *Boyd v. Biggers*, 31 F.3d 279, 284 (5th Cir.1994); *Krueger v. Reimer*, 66 F.3d 75, 76-77 (5th Cir.1995) (per curiam); *Graves v. Hampton*, 1 F.3d 315, 317 (5th Cir.1993), *abrogated on other grounds by Arvie v. Broussard,* 42 F.3d 249 (5th Cir.1994). "A judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural

errors." *Stump v. Sparkman*, 435 U.S. 349, 359 (1978); *Brandley v. Keeshan*, 64 F.3d 196, 200-201 (5th Cir.1995), *cert. denied*, 516 U.S. 1129 (1996). Judicial immunity is an immunity from suit and not just from the ultimate assessment of damages. *Mireles v. Waco*, 502 U.S. 9, 11, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991). "Although unfairness and injustice to a litigant may result on occasion, 'it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.' " *Id.* at 10 (citation omitted).

Judicial immunity is a matter of policy and is necessary because a judge "... should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption [and] [i]mposing such a burden on judges would contribute not to principled and fearless decisionmaking but to intimidation." *Pierson v. Ray,* 386 U.S. 547, 554 (1967). Consequently, judicial immunity cannot be overcome even by allegations of bad faith or malice; such immunity "applies even when the judge is accused of acting maliciously and corruptly." *Mireles,* 502 U.S. at 11 (internal quotation marks and citation omitted). In determining whether a judge is entitled to immunity, "[i]t is the Judge's actions alone, not intent, that we must consider." *Malina v. Gonzales*, 994 F.2d 1121, 1125 (5th Cir.1993).

Judicial immunity can only be defeated by showing that the judge's actions were of a non-judicial nature or that he acted in the complete absence of jurisdiction. *Mireles,* 502 U.S. at 11-12. In determining whether the complained of actions were non-judicial in nature, that is to say, whether the judge acted outside the scope of his judicial capacity, the court should consider a variety of factors: (1) whether the precise act complained of is a normal judicial function; (2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's

chambers; (3) whether the controversy centered around a case pending before the court; and (4) whether the acts arose directly out of a visit to the judge in his official capacity. *Malina*, 994 F.2d at 1124 (citation omitted). These factors must be broadly construed in favor of immunity. *Id*.

Courts use the "functional" approach in deciding whether an act is judicial for purposes of immunity. *Cleavinger v. Saxner*, 474 U.S. 193, 201-02 (1985). The issue of "immunity analysis rests on the status of the defendant. Absolute immunity flows not from rank or title or 'location within the Government,' but from the nature of the responsibilities of the individual official." *Id*. In deciding whether absolute judicial immunity applies, a court should consider the nature of the act taken, namely whether it is a function normally performed by a judge, and the expectations of the parties, namely whether they dealt with the judge in his judicial capacity. *Stump v. Sparkman,* 435 U.S. 349, 362 (1978).

Plaintiff's claims against Judge Blanchet and Commissioner Andre Doguet arise from a child support dispute which began in or around November 2017, in the 15th Judicial District Court, presided over by Judge Blanchet.  Plaintiff attacks numerous rulings made by Judge Blanchet including rulings on income assignment orders, final judgments, a motion to reconsider, a motion for clarity, and a motion for counsel to withdraw.  Plaintiffs also complain about conferences presided over by commissioner Andre Doguet.  Clearly, plaintiff sues the judicial officers for acts that arose out of their normal judicial function, and they are entitled to absolute judicial immunity.

Moreover, plaintiff's claims against the judicial officials- clerks, administrative officers and assistants, must also fail. The Fifth Circuit has held that court personnel - including the Clerk of Court - are entitled to absolute immunity from suit to the extent that they are acting at the judge's direction. *Clay v. Allen*, 242 F.3d 679, 682 (5th Cir.2001) (holding that court clerks are entitled to absolute immunity for acts they are specifically required to do under court order or at a judge's

discretion).   A judge's law clerk is also absolutely immune from damage claims arising from actions taken by the law clerk in assisting the judge in carrying out his judicial functions. *Mitchell v. McBryde,* 944 F.2d 229, 230 (5th Cir.1991).   Jean Hill and Louis Peret named herein are thus immune from suit.

Finally, a district attorney and his assistants are absolutely immune in a civil rights suit for any action taken pursuant to their role as prosecutors in preparing for the initiation of judicial proceedings and in presenting the State's case. *See Kalina v. Fletcher*, 522 U.S. 118, 129 (1997); *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976); *Esteves v. Brock*, 106 F.3d 674, 676 (5th Cir.1997).   The Fifth Circuit has repeatedly recognized the purpose of the immunity defense is to protect public officials from undue interference with their duties and from disabling threats of liability.   *Geter v. Fortenberry*, 849 F.2d 1550, 1552 (5th Cir. 1988).   Absolute immunity is immunity from suit rather than from liability. *Elliott v. Perez*, 751 F.2d 1472 (5th Cir. 1985). The Fifth Circuit "has likewise accepted the premise that the protected official should be sheltered from trial and pre-trial preparation as well as liability." *Id*. at 1478.   The instant complaint is devoid of any facts that establish plaintiff's claims are for any action other than Don Landry's role as a prosecutor and, as such, he is absolutely immune from this suit.

### 2)  *Jessica Sonnier Mouton*

Under § 1983, individuals maintain a private right of action to redress the violation of constitutional rights or federal law by those acting under color of state law. *Tex. Mfr'd. Hous. Ass'n, Inc. v. City of Nederland*, 101 F.3d 1095, 1106 (5th Cir. 1996). The statute is not itself a source of substantive rights, but rather it "merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 114 S. Ct. 807, 811 (1994) (quoting *Baker v. McCollan,* 99 S. Ct. 2689, 2694, n.3 (1979)). To state a claim of relief under § 1983, the plaintiff must allege that

defendants were persons acting under color of state law who deprived him of a right secured by the Constitution or the laws of the United States. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 119 S. Ct. 977, 985 (1999); *Augustine v. Doe*, 740 F.2d 322, 324-25 (5th Cir. 1984).  A private person or non-state actor may also be liable under § 1983 if there is some proof of an overt joint action taken with the State or one of its agents, to violate his constitutional rights.  *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980); *Pete v. Metcalfe*, 8 F.3d 214, 216-17 (5th Cir. 1993); *Hobbs v. Hawkins*, 968 F.2d 471, 480 (5th Cir. 1992).

Plaintiffs' claims against Duncan's ex-wife, Jessica Sonnier Mouton, are barred because she is not a state actor, nor have plaintiffs provided any proof of an overt joint action taken with the State or one of its agents to violate their constitutional rights.

### 3)  *Captain Todd Credeur and Mark Garber*

Finally, plaintiffs name Lafayette Parish Sheriff Mark Garber and Captain Todd Credeur as defendants.  Plaintiffs are hereby advised: "Supervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional deprivations; and (ii) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d 924, 929 (5th Cir.1992), *cert. denied*, 113 S.Ct. 2443 (1993). "Vicarious liability does not apply to § 1983 claims." *Pierce v. Texas Dept. of Crim. Justice, Inst. Div.*, 37 F.3d 1146, 1150 (5th Cir.1994), *cert. denied*, 115 S.Ct. 1957 (1995). "Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir.), cert. denied, 104 S.Ct. 248 (1983). In other words, to the extent that plaintiffs seek to name supervisory officials as defendants, they must allege facts sufficient to demonstrate either personal involvement or the implementation of unconstitutional policies by those defendants.  Plaintiffs have failed to

do so with respect to Sheriff Garber or Captain Credeur and therefore, these defendants should be dismissed.

## III.    CONCLUSION

For reasons stated above, **IT IS RECOMMENDED** that all claims related to the state court proceedings, as well as any and all claims against David Blanchet, Jean Hill, Andre Douget, Jessica Sonnier Mouton, Mark Garber, Todd Credeur, Don Landry and Louis Peret, be **DISMISSED WITH PREJUDICE** as frivolous, for failing to state a claim for which relief may be granted, and for seeking money damages against a defendant who is immune from suit, pursuant to the provisions of 28 U.S.C. § 1915(e)(2).[1]

**IT IS FURTHER RECOMMENDED** that the Motion for Preliminary Injunction (doc. 1) be **DENIED** as **MOOT**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

THUS DONE AND SIGNED in chambers this 12th day of February, 2025.

_____
**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**

---

[1] Claims against defendants Rudd, Fontenot, Palmature, Pellerin, Prudhomme and Lastrapes are addressed in a separate order.